IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MATTHEW DAVID RUFF, 39612-177, | § | |
|     Petitioner, | § | |
| | § | 3:11-CV-1318-M |
| v. | § | 3:09-CR-339-M |
| | § | |
| UNITED STATES OF AMERICA, | § | |
|     Respondent. | § | |

## FINDINGS, CONCLUSIONS AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

This cause of action was referred to the United States Magistrate Judge pursuant to the provisions of Title 28, United States Code, Section 636(b), as implemented by an order of the United States District Court for the Northern District of Texas.  The Findings, Conclusions and Recommendation of the United States Magistrate Judge follow:

**I.  Procedural Background**

Petitioner pled guilty under a plea agreement to one count of receipt of child pornography in violation of 18 U.S.C. § 2252A(a)(2).  Under the plea agreement the government and Petitioner agreed, pursuant to Fed. R. Crim. P. 11(c)(1)(C), that Petitioner's sentence would be not less than 78 months and not more than 97 months in prison.  On June 25, 2010, the District Court sentenced Petitioner to 84 months in prison and a seven year term of supervised release. He did not file a direct appeal.

On June 15, 2011, Petitioner filed the instant habeas petition pursuant to 28 U.S.C. § 2255.  He argues:

    1.    His guilty plea was involuntary; and

    2.      He received ineffective assistance of counsel when:

        (a)    counsel failed to investigate his computer files and review discovery prior to advising him to plead guilty;

        (b)    counsel allowed the government to withhold exculpatory and/or mitigating evidence; and

        (c)    counsel had a conflict of interest.

On September 13, 2011, Respondent filed its answer. Petitioner did not file a reply. The Court now finds the petition should be denied.

## II.  Factual Background

The following factual background is taken from the PSR and the sentencing transcripts.

Petitioner contacted Best Buy's Geek Squad to repair his personal computer. On June 15, 2008, Best Buy dispatched a computer technician to Petitioner's home in Dallas. While working on the computer, the technician observed that it was downloading files with names suggesting they contained child pornography. The computer also projected graphics from these files onto the screen, and the technician noticed that these images corroborated his belief that the files contained child pornography. The technician excused himself from Petitioner's home and alerted the Dallas Police Department in accordance with company policy.

On June 17, 2008, Dallas police executed a search warrant at Petitioner's residence. Officers seized three computers and an external hard drive. During a non-custodial interview at his home, Petitioner admitted to a detective that he viewed child pornography he downloaded, but said he "usually" deleted it. He admitted that some files containing child pornography might still be on his computer.

During the interview, Petitioner also admitted he searched for files containing the term "PTHC" in the title.  (Sent. Tr. at 46.)  Although this term is commonly understood to mean "Pre-Teen Hardcore," Petitioner told the detective he thought it meant "Pissing Teens Hardcore."  (Sent. Tr. 142, 47.)  Detective Lori Rangel testified that she found 144 child pornography videos on Petitioner's computers.  (Sent. Tr. at 49.)

After the government conducted a forensic examination on Petitioner's computers, it informed his counsel that Petitioner was the target of a grand jury investigation concerning activities including distribution, receipt and possession of child pornography.  The government informed defense counsel that the FBI forensic lab reported that Petitioner's computer settings were configured to share the child pornography files, which would support a charge for distribution.

Defense counsel retained a computer forensic expert who disputed the government's finding that Petitioner shared child pornography files.  The government agreed not to charge Petitioner with distribution of child pornography in the plea agreement.

Pursuant to the plea agreement, Petitioner pled guilty to the charge of possession of child pornography.  The Court sentenced him to 84 months in prison and a seven year term of supervised release.

### III.  Discussion

**1.      Guilty Plea**

Petitioner argues his guilty plea was involuntary because his counsel failed to inform him of "the nature and consequences" of his plea.  He states he told his counsel he was not guilty of the charges and that he never viewed any child pornography.  (Pet. Brief at 4.)  Petitioner states

his counsel did not explain the consequences of the plea, and therefore he did not know that "he could not later contest the evidence against him, claim his innocence, or ask that the judge reject the charges against him." *Id.*

A defendant's guilty plea must be made voluntarily, and the defendant must "make related waivers 'knowing[ly], intelligent[ly], [and] with sufficient awareness of the relevant circumstances and likely consequences.'" *United States v. Ruiz*, 536 U.S. 622, 628 (2002) (quoting *Brady v. United States*, 397 U.S. 742, 748 (1970)).  A determination of whether a defendant understands the consequences of his guilty plea does not require a trial court to determine that the defendant has a perfect understanding of the consequences, however.  The court must only ascertain whether the defendant has a realistic or reasonable understanding of his plea.  *See United States v. Gracia*, 983 F.2d 625, 627-28 (5th Cir. 1993).

Courts considering challenges to guilty plea proceedings "have focused on three core concerns: absence of coercion, the defendant's understanding of the charges, and a realistic understanding of the consequences of a guilty plea." *Gracia*, 983 F.2d at 627-28.  A realistic understanding of the consequences of a guilty plea means that the defendant knows the "immediate and automatic consequences of that plea such as the maximum sentence length or fine." *Duke v. Cockrell*, 292 F.3d 414, 416 (5th Cir. 2002).  Further, "[w]hen the record of the Rule 11 hearing clearly indicates that a defendant has read and understands his plea agreement, and that he has raised no question regarding a waiver-of-appeal provision, the defendant will be held to the bargain to which he agreed." *United States v. McKinney*, 406 F.3d 744, 746 (5th Cir. 2005) (*quoting United States v. Portillo*, 18 F.3d 290, 293 (5th Cir. 1994)).

Additionally, prisoners challenging their guilty pleas on collateral review must overcome

a "strong presumption of verity" accorded "solemn declarations" made in open court. *See Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977). Prisoners must also overcome the presumption of regularity and "great weight" accorded court documents. *United States v. Abreo*, 30 F.3d 29, 32 (5th Cir. 1994) (holding that a signed, unambiguous plea agreement "is accorded great evidentiary weight" when determining whether a plea is entered voluntarily and knowingly); *Bonvillain v. Blackburn*, 780 F.2d 1248, 1252 (5th Cir. 1986) (holding that court records are "accorded great weight").

In this case, the record shows Petitioner knowingly and voluntarily entered his guilty plea. Petitioner stated he received a copy of the information and that he understood the charge. (Plea Tr. at 14.) The government read the essential elements of the charge aloud, and Petitioner admitted to committing each element. (*Id*. at 15.) Petitioner stated he read the plea agreement before he signed it and that he agreed with the statements in the plea agreement. (*Id*. at 16.) Petitioner stated he was voluntarily pleading guilty. (*Id*. at 16 -17.) Petitioner was informed that his range of punishment was five years to twenty years in prison. (*Id*. at 17.) Petitioner stated he read the factual resume and that the facts therein were true and correct. (*Id*. at 21.) Petitioner stated he understood that under the plea agreement he would receive not less than 78 months in prison and not more than 97 months in prison. (*Id*. at 18.) At the sentencing hearing, the District Court asked the defense whether it wanted the Court to accept Petitioner's guilty plea. Defense counsel stated that Petitioner did want the Court to accept his guilty plea, which Petitioner did not dispute. (Sent. Tr. at 4.) Petitioner has failed to show that his guilty plea was not knowingly and voluntarily entered.

**2.      Ineffective Assistance of Counsel**

Petitioner argues his ineffective assistance of counsel claims should be analyzed under *United States v. Cronic*, 466 U.S. 648 (1984). *Cronic* applies where a defendant can show that he was constructively denied counsel. If counsel is merely ineffective, the Court analyzes a petitioner's claims under *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Under *Cronic*, an attorney's deficient conduct is presumed prejudicial where a defendant can show that: (1) he was denied counsel at a critical stage of the proceedings, or (2) counsel failed to subject the government's case to meaningful adversarial testing. *Id*. at 659. "A constructive denial of counsel occurs . . . in only a very narrow spectrum of cases." *Craker v. McCotter*, 805 F.2d 538, 542 (5th Cir. 1986) (internal quotation and citation omitted).

In this case, Petitioner has failed to show he was denied counsel at any critical stage of the proceedings. Additionally, although he argues his counsel failed to adequately challenge the government's case, as discussed below, Petitioner has failed to show his counsel failed to subject the government's case to meaningful adversarial testing. The Court therefore applies the standards enunciated in *Strickland* to evaluate Petitioner's claims.

To sustain a claim of ineffective assistance of counsel under *Strickland*, Petitioner must show that: (1) counsel's performance was deficient; and (2) the deficient performance prejudiced the defense so gravely as to deprive Petitioner of a fair trial. *Strickland*, 466 U.S. at 687. In *Strickland*, the Court stated that "[j]udicial scrutiny of counsel's performance must be highly deferential" and "every effort [must] be made to eliminate the distorting effects of hindsight." *Strickland*, 466 U.S. at 689. Courts, therefore, must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id*.

Even if counsel is proven deficient, a petitioner must prove prejudice. To prove such prejudice, Petitioner must show "a reasonable probability that the result of the proceedings would have been different but for counsel's unprofessional errors." *Crane v. Johnson*, 178 F.3d 309, 312 (5th Cir. 1999) (citing *Strickland*, 466 U.S. at 694). "[T]he mere possibility of a different outcome is not sufficient to prevail on the prejudice prong." *Id*. "Rather, the defendant must demonstrate that the prejudice rendered sentencing 'fundamentally unfair or unreliable.'" *Id*. (quoting *Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993)). In the context of a guilty plea, a petitioner's burden to show prejudice requires demonstration that "there is a reasonable probability that, but for counsel's errors, defendant would not have pled guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52 (1985).

### A. Failure to Investigate Computer Files

Petitioner argues his counsel was ineffective for failing to review his computer files to determine there was no evidence that he distributed child pornography.[1] He also argues there was no evidence he viewed the video that was charged in the information and that, if defense counsel had investigated the rest of the images, he could have shown there was no intent to possess child pornography and that any child pornography downloads were inadvertent.

Contrary to Petitioner's assertion that defense counsel failed to determine there was no evidence of distribution, defense counsel strongly and successfully argued against a charge for distribution. The government initially offered a plea agreement that included a charge for distribution. The government's FBI expert determined that Petitioner used a peer-to-peer

---

[1] During plea negotiations and at the plea hearing, Petitioner was represented by Jim Burnham and Bob Webster. At sentencing, Petitioner was represented by Burnham, Webster and Marlo Cadeddu.

sharing software called Limewire to distribute child pornography. Defense counsel retained a computer forensic expert to examine Petitioner's computer files. The defense expert contradicted the FBI expert's findings and concluded there was no evidence that Petitioner shared files. As a result of defense counsels' efforts, the government agreed not to charge Petitioner with distribution in exchange for a guilty plea to receiving child pornography. Petitioner has failed to show he received ineffective assistance of counsel.

Additionally, Petitioner argues there was no evidence he viewed the video charged in the indictment. If defense counsel had conducted a sufficient investigation, he could have shown than any download of the other images was inadvertent and he was therefore not guilty of the charges. Petitioner, however, admitted during both his guilty plea and his sentencing hearing that he was guilty of possessing child pornography as charged in the information. Further, his forensic expert conducted a full forensic review of the evidence. (Sent. Tr. at 107.) His expert testified that Petitioner's computers contained numerous videos of child pornography and that her analysis showed Petitioner viewed several of these videos. (Sent. Tr. at 109-110, 139-40.) Petitioner has failed to show deficient performance or that he suffered the required prejudice. This claim should be denied.

### B.     Mitigating and Exculpatory Evidence

Petitioner argues counsel failed to determine prior to his guilty plea that he had not viewed the image charged in the information. He states this evidence was exculpatory and the government withheld this evidence.

During the sentencing hearing, Petitioner's forensic expert testified that she believed Petitioner did not open the file charged in the information. (Sent. Tr. at 118.) The District Court

questioned whether Petitioner could plead guilty to knowingly possessing the file charged if he now argued he did not in fact possess the image. (Sent. Tr. at 163-64). Defense counsel stated that, at the time Petitioner entered his guilty plea, the government had not yet provided the defense with access to Petitioner's computer for their forensic expert to review. The defense therefore did not know at that time that Petitioner did not possess the image charged. (*Id*. at 162.) Defense counsel explained that there were other images on Petitioner's computer that forensics showed Petitioner did view and that one of these other images could have been substituted in the charge. (*Id*. at 163-64.) Defense counsel stated there was an advantage to pleading to the charged image because there was no identifiable victim in that image who could be eligible for restitution under the Civil Recovery Act. (*Id.* at 164.) Petitioner has failed to show he suffered the required prejudice by his counsels' actions. This claim should be denied.

    **C.    Conflict of Interest**

Petitioner argues his counsel was ineffective because counsel had a conflict of interest. Petitioner states his brother paid counsels' legal fees and, although Petitioner wanted to contest the charges, his brother wanted him to plead guilty. Petitioner states this conflict led counsel to advise Petitioner to plead guilty.

Petitioner has failed to establish a conflict of interest. The fact that a third party pays a defendant's legal fees does not, by itself, create a conflict of interest. *United States v. Corona*, 108 F.3d 565, 575 (5th Cir. 1997). Further, defense counsel Webster submitted a declaration stating that, to his knowledge, Petitioner's brother never attempted to influence Petitioner's defense and Petitioner's brother did not influence the decisions Webster made in Petitioner's case. (Webster Decla. at 4.)

Additionally, Petitioner admitted possessing child pornography, and his forensic expert testified that Petitioner viewed multiple videos of child pornography on his computer. Petitioner has failed to establish that his counsels' advice to plead guilty was constitutionally ineffective.

**RECOMMENDATION**

For the foregoing reasons, the Court recommends that the motion to correct, vacate or set-aside sentence pursuant to 28 U.S.C. § 2255 be denied.

Signed this 29th day of October, 2012.

_____
PAUL D. STICKNEY
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND**
**NOTICE OF RIGHT TO APPEAL/OBJECT**

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).